USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

U.S. DISTRICT COURT
FILED
JUL 12 2006
W.P.
S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
TIMOTHY HINCKLEY and JUNE HINCKLEY,

                Plaintiffs,

       -against-

WESTCHESTER RUBBISH, INC. and
TOWN OF LEWISBORO,

                Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

04 Civ. 0189 (SCR) (GAY)

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:


      Plaintiffs commenced this personal injury action seeking to recover damages for

injuries sustained when plaintiff Timothy Hinckley was thrown from the back of a

garbage truck upon which he was riding. On December 19, 2005, Your Honor entered

a partial default judgment against defendant Westchester Rubbish, Inc. On December

20, 2005, Your Honor referred this matter to the undersigned to report and recommend

the amount of damages to be awarded plaintiff against Westchester Rubbish, Inc.

Plaintiffs, in response to my direction, filed a timely written inquest submission;

defendant Westchester Rubbish, Inc. failed to respond. On June 1, 2006 I held an

inquest at which plaintiffs presented evidence on damages. Defendant Westchester

Rubbish, Inc. did not appear at the inquest. For the reasons that follow, I respectfully

recommend that plaintiffs be awarded $2,560,960.00 in compensatory damages.

MICROFILM

JUL 12 2006
USDC SD NY WP

considered on ... 7/12/06

## I. FACTS

Two witnesses testified at the inquest: plaintiff Timothy Hinckley and Dr. Laura Ciuffo. The following statement of facts is based on the complaint, plaintiff's written inquest submission and those portions of the testimony I found to be credible.

Plaintiff Timothy Hinckley is presently forty years old. He is a high school graduate and, at the time of the accident, he had been employed as a sanitation worker for about three years. Hinckley earned between $800.00 and $1,000.00 per week, depending on the amount of overtime. He is married to plaintiff June Hinckley, although they have been separated since April 4, 2004. At some unknown time or times prior to the accident, Hinckley had undergone spinal surgery and bilateral knee surgery. He weighed approximately 289 pounds at the time of the accident.

On October 6, 2003, Hinckley was thrown approximately eight feet to the ground, from the back of a garbage truck upon which he was riding, and landed on his head. Hinckley was initially unconscious; upon regaining consciousness at the scene he was disoriented, incoherent and combative. He was intubated at the scene and airlifted to the Westchester Medical Center. Stat flight personnel noted that Hinckley initially scored a "9" on the Glasgow Coma Scale (an indicator of brain injury, with "3" being the worst and "15" the best), but his conditioned worsened and within thirty minutes his score dropped to a "3" (where it remained at the last recorded assessment four minutes later).

Upon arrival at Westchester Medical Center, Hinckley was examined in the emergency room by orthopaedic staff. X-rays indicated a minimally displaced subcapital fracture of the left femoral neck; a head CT revealed an epidural hematoma.

2

Hinckley also sustained a pulmonary contusion and a temporal bone fracture. Neurosurgery staff took him emergently to the OR, where Hinckley underwent a craniotomy and evacuation of the epidural hematoma. Immediately following that procedure, Hinckley underwent surgery to repair the femur fracture, via open reduction and internal fixation.

Hinckley remained in intensive care for much of his hospital stay. At some point, a psychology consult was called due to his increased agitation. On October 22, 2003, Hinckley developed a deep vein thrombosis for which Heparin was prescribed. On October 27, 2003, he complained that he could not hear out of his left ear; the next day he complained of left ear pain. An ENT consult was ordered and Hinckley was found to have a left facial nerve paresis, which was treated with a course of prednisone. Hinckley received physical and speech therapy throughout his hospital stay. His condition improved significantly and, on November 5, 2003, he was transferred to acute inpatient rehab. Hinckley remained there for approximately ten days, after which he returned home.

For at least the next two months, Hinckley required, and received, home skilled nursing care. Additionally, Hinckley received physical therapy twice a week and speech therapy three times a week. Hinckley became severely depressed and developed suicidal tendencies; he sought treatment with a psychiatrist, who prescribed the antidepressant medication Paxil.

In or about December, 2004, Hinckley still could not hear out of his left ear and he sought treatment from Dr. Monroe, an ENT physician. Dr. Monroe concluded that bones were shattered behind the ear, that surgery was not an option and that

Hinckley's partial deafness was most likely permanent.

Hinckley also had difficulty recovering from his femur fracture surgery. He continued to have left hip pain which worsened with ambulation. After several months of evaluations and several sets of X-rays, doctors determined that the prior surgery had failed. On June 24, 2004, Hinckley underwent hip replacement surgery.

Hinckley currently resides in a convalescent home. Although he and his wife are still legally married, they separated in April, 2004. He cannot presently work. He has gained approximately one hundred and sixty pounds since the accident; Hinckley attributes this weight gain to his lack of activity. He presently undergoes physical therapy once a week, and receives ongoing treatment from a psychiatrist, a neurologist and an orthopaedist. Hinckley still suffers from depression and takes antidepressant medication. He is deaf in his left ear; he gets pounding headaches on the left side; he has dizziness; his memory is compromised. Hinckley has ongoing pain in his left leg, hip and back which interferes with his ability to walk. He uses a cane and takes pain medication daily. Hinckley also has difficulty sleeping because his leg has to be elevated.

According to Dr. Cuiffo, Hinckley's headaches, dizziness and cognitive deficits are permanent, as is his hearing loss (although the loss is not quantified). Hinckley has a permanent plate in his skull. His life activities are permanently limited; he will permanently suffer limited walking ability and increased exposure to infection, as well as permanent restrictions on reaching, bending and lifting. Dr. Cuiffo stated that Hinckley is permanently disabled from sanitation work. Additionally, according to Dr. Ciuffo, Hinckley will likely undergo additional hip replacement surgery because artificial

4

hips generally need to be "revised" after fifteen years or so (depending on several variables, including weight).

## II. DISCUSSION

### A. Damages Following Default Judgment

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). However, "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). The assessment of damages following entry of a default judgment in a diversity action is governed by state law standards. See Consorti v. Armstrong World Indus., Inc., 103 F.3d 2, 4 (2d Cir. 1995). Under New York law, which governs here, courts look to approved awards in similar cases as guideposts in fashioning appropriate damage awards. See Villalba v. Rockford Sys., Inc., No. 02-CV-4455, 2006 WL 5266660, at *4 (E.D.N.Y. Mar. 3, 2006).

### B. Lost Wages and Future Earnings

Plaintiff testified that he has been unable to work since the accident and presented evidence that he was earning between $800.00 and $1000.00 per week at the time of his accident. Based upon the evidence, using the lower wage figure, I find that plaintiff is entitled to an award of $92,000.00 for past lost wages through the date of entry of the default judgment. With respect to future earnings, plaintiff has an anticipated work-life of approximately twenty (20) years from the date of this decision.

See Vol. 1B, *N.Y. Pattern Jury Instructions*, 3d ed. 2006, Table 3, Appendix B. From the date of entry of the default judgment through the remaining twenty years of plaintiff's work-life expectancy, the total of lost future earning based upon the same lower wage figure equals $854,400.00 ($1,600.00 for the last two weeks of 2005, $41,600.00 for each year through 2025 and $20,800.00 for .50 of the year 2026).

However, the evidence compels a downward adjustment of this full future amount. Plaintiff testified that he cannot *presently* work. Dr. Ciuffo testified that plaintiff will not be able to work in the future *as a sanitation worker*. In sum, the evidence establishes–at best–that plaintiff is totally disabled from employment as of today and that he is permanently disabled from employment as a sanitation worker. This leaves open the possibility that plaintiff may be able to find some employment at some point in the future. I recognize–given plaintiff's limited education and permanent physical limitations–that he may not be able to work full-time and may have to pursue part-time, sedentary work. Based upon the evidence, I conclude that the full future lost wages amount should be reduced by ten percent (10%). Accordingly, I respectfully recommend that plaintiffs are entitled to awards for past and future lost earnings in the amounts of $92,000.00 and $768,960.00, respectively.

C. Past and Future Pain and Suffering

An award for pain and suffering includes compensation for physical pain, emotional pain and loss of enjoyment of pleasurable life activities. The evidence presented here establishes that Hinckley has suffered severe injuries that have caused him pain, and will likely continue to cause him pain for the rest of his life and restrict the quality of life he will lead. Hinckley suffers anxiety and severe depression as a result of

6

the accident. He has permanent hearing loss in his left ear; his headaches, dizziness and cognitive deficits are also permanent. He will likely undergo future hip replacement surgery. In sum, Hinckley has suffered painful and emotionally traumatic injuries which have severely limited his capacity to enjoy life. A review of analagous cases indicates that an award for past and future pain and suffering in the range of $1,500,000.00 to $2,500,000.00 would be reasonable compensation. See Reed v. City of New York, 757 N.Y.S.2d 244 (1st Dep't 2003) ($2,500,000 each for past and future pain and suffering awarded to pedestrian struck by a police motor scooter, where pedestrian suffered multiple skull fractures resulting in brain damage, memory loss, dizziness, anxiety and depression, a herniated disc, seizures and risk of continued deterioration); Starr v. Cambridge Green Homeowners Assoc., Inc., 751 N.Y.S.2d 640 (3d Dep't 2002) ($528,000 for past pain and suffering and $750,000 for future pain and suffering awarded to worker who fell off roof and sustained multiple femur fractures requiring surgery and insertion of pin, fractured heel bone, wrist and hip); Vasquez v. City of New York, 748 N.Y.S.2d 140 (1st Dep't 2002) ($250,000 for past pain and suffering and $950,000 for future pain and suffering over 39.6 years awarded to plaintiff who fell on broken sidewalk and sustained a fracture of the tibia and fibula and a tear of the interosseous membrane, requiring open reduction and internal fixation with metal rod and screws). See also the following cases taken from the New York State Jury Verdict and Review Analysis: Tehozol v. Anand Realty ($2,300,000 awarded in January 2006 for pain and suffering to 37-year-old male who was beaten by attackers in apartment lobby and sustained clavicle fracture and epidural hematoma requiring a craniotomy); Pizzuro v. Kranzco Realty, Inc. ($1,150,000 awarded in August 2002 for pain and

suffering to 28-year-old female who tripped and fell on a sidewalk and sustained scoliosis and a femur fracture, which required open reduction and internal fixation and resulted in surgical scarring); Vanderlende v. Huguel Corp. ($539,000 awarded in January 2002 for pain and suffering to 39-year-old female injured when a kitchen cabinet fell from the wall and struck her in the head, causing a closed head injury with mild cognitive deficits and short-term memory loss); Broder v. Turner Constr. Co. ($970,000 awarded in March 2001 for pain and suffering to 46-year-old electrician foreman injured on worksite who suffered head injuries resulting in post-concussion syndrome, memory loss, dizziness, headaches, depression, the aggravation of preexisting neck pain, foot fracture, foot sprain); Bruni v. City of New York ($1,600,000 awarded in May 2001 for pain and suffering to 51-year-old male who fell in a large hole and sustained a closed head injury resulting in short-term memory loss, a jaw fracture which required internal fixation and a facial laceration which resulted in permanent scarring); Philips v. Boston Properties ($750,000 awarded in April 2001 for pain and suffering to 71-year-old male who tripped and fell over a bench and sustained a femur fracture which required open reduction and internal fixation); Salvant v. City of New York ($1,000,000 settlement in October 2000 to plaintiff in his 30's injured in auto accident, who sustained a fractured hip necessitating open reduction and internal fixation (with likelihood of early hip replacement), several fractured teeth and significant back and knee pain); Roness v. Federal Express Corp. ($1,000,000 awarded in December 2000 for pain and suffering to 44-year-old female struck by car, who suffered a closed head injury, resulting in cognitive defects, short-term memory loss and a subdural hematoma); Teplani v. Joma Holdings ($1,800,000 settlement in March 1999

8

to plaintiff roofer who fell fifteen feet through skylight and sustained basal skull fracture and epidural hematoma, which required evacuation surgery and resulted in permanent severe headaches and dizziness and significant difficulties with concentration and memory); Reece v. New York City Bd. of Educ. ($500,000 for past pain and suffering and $1,500,000 for future pain and suffering awarded in March 1999 to 50-year-old female who slipped and fell and sustained a sub-capital femur fracture necessitating a partial hip replacement, where plaintiff continued to suffer substantial pain and a very substantial limp, and where she will likely require at least one and probably two additional hip replacement procedures throughout the course of her life expectancy); Schuh v. Nat Carting ($975,000 settlement in January 1996 to 55-year-old plaintiff struck by trash truck, who suffered right leg degloving resulting in permanent pain and a limp, and a left frontal epidural hematoma which required a craniotomy and resulted in los of taste and partial loss of memory); Abdallah v. City of New York ($3,333,000 awarded in June 1996 for pain and suffering to 52-year-old male struck by police car, who suffered moderate brain injury resulting in cognitive defects and personality changes requiring two lobotomies, a subdural hematoma necessitating an emergency craniotomy and insertion of wire mesh and a plate in his skull, and a spleenectomy); O'Hara v. Stahl ($3,500,000 settlement in January 1991 to 40-year-old male who fell fifty feet in an elevator shaft and sustained fractures of both femurs and elbows (all requiring surgery), and an epidural hematoma which required a craniotomy and resulted in memory loss and depression).

Accordingly, I conclude, and respectfully recommend, that plaintiffs are entitled

9

to awards for past and future pain and suffering[1] in the amounts of $500,000.00 and $1,200,000.00, respectively.

## III. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F.2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated: July 12, 2006
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.

---

[1] The amount awarded for future pain and suffering assumes that Hinckley has a life expectancy of approximately thirty-six (36) years. See Vol. 1B, *N.Y. Pattern Jury Instructions*, 3d ed. 2006, Table 2, Appendix A.